Good morning everyone. We have five cases on this morning's argument calendar and we'll begin with number 22-1368 Howe v. Jeffreys. And we'll recognize, is it Ms. Jonig? Good morning. Good morning, Your Honor, and may it please the Court. Assistant Attorney General Lee Jonig for the Defendant Appellants. Before getting into the merits, I'd like to briefly address Plaintiff's argument that the Prison Litigation Reform Act does not apply to this injunction. That argument was forfeited because it was not raised in the District Court when the parties directly litigated the issue of whether the injunction complied with the PLRA. Plaintiff's brief offers no reason to overlook this forfeiture and the Court should not do so. Even if the Court were to reach this argument, it directly contradicts this Court's case law and is incorrect as a matter of statutory interpretation. This Court held in Kalinowski that the PLRA applies to civil cases brought by persons who have been committed under Illinois' Sexually Dangerous Persons Act. Their criminal proceedings are paused while they are in commitment and they are vacated only upon discharge from commitment. Plaintiffs offer no compelling reason for this Court to overlook this longstanding precedent. And as to Plaintiff Howe in particular, he has continuously been under the jurisdiction of the Committing Court since 2013. Plaintiff's limited new evidence that they're trying to introduce on appeal doesn't take Mr. Howe outside of the statutory definition. And even if there were some dispute or some ambiguity as to what these many years old docket entries mean, that's an argument that he should present to the State Court and in fact has presented to the State Court and that's currently pending as I understand it. Moreover, even setting aside Kalinowski, the PLRA applies to this suit because this suit concerns prison conditions. That term is defined in Section 3626, the very same section that contains the limitations on prospective relief. And this suit clearly falls under that definition. It pertains to the conditions of the plaintiff's confinement and it pertains to the effects of actions by government officials on the lives of persons confined in prison. That definition is intentionally broad as the Supreme Court recognized in Porter when it explained that it covers all inmate suits about prison life. It certainly encompasses suits about mental health treatment which is a frequently litigated suit about prison conditions as this court recognized in Witski. And plaintiffs cite no examples of any cases where any court found that a claim about mental health treatment in prison was not a suit about prison conditions. Their only argument is to try to distinguish this suit from suits about prison conditions because it pertains to the purpose of their confinement. But they don't cite any authority in support of this argument and doesn't have any basis in the statutory text. It's contrary to this court's admonition not to add non-textual qualifiers to this particular definition and again it's the Supreme Court in Porter which recognized that these suits are broad. Because the PLRA applies to this lawsuit it constrains the district court's remedial power in this case and it requires the injunction be narrowly tailored, extend no further than necessary and be the least intrusive means to remedy a constitutional wrong. Here the district court applied the incorrect legal standard when it determined that the injunction complied with the PLRA. Before we get to the dialogue which is important about the scope of the injunction, does the department acknowledge, you're not contesting the underlying finding of constitutional violations? In other words, okay the PLRA applies in your view, assume it applies, then we're going to have a dialogue right now about the scope of the injunction but I want to make sure when we get into the scope of the injunction you're not challenging the underlying finding of constitutional violations, correct? That's correct, your honor. We did not challenge the district court's finding that the plaintiffs, the three plaintiffs treatment that they were receiving didn't comply with due process. Okay. And accepting all of the district court's factual findings as we are about what is necessary to comply with due process, the district court's remedy went further than that. That alone shows the district court's legal error and this court can vacate the injunction on that basis alone. It's most prominently illustrated in the first part of the injunction that requires that plaintiffs receive at least seven and a half hours of core group therapy per week. Now the district court found that five hours was what it called the minimum acceptable number of hours of core group therapy per week. And even assuming that this is equivalent to the seven and a half hours, plainly go above that five hour supposed minimum. That mismatch shows the district court didn't apply the correct legal standard and requires a remand. There were also other parts of the district court's analysis that reflect its application of the incorrect legal standard. Most prominently the district court's finding of the minimum or acceptable number of hours of therapy doesn't reflect an application of the legal standard for this particular constitutional claim, which is found in Youngberg. That requires that treatment complies with due process unless it is a substantial departure from professional judgment. So finding the limits of professional judgment doesn't complete the analysis. The district court has to consider what would be a substantial departure from professional judgment and that's the constitutional floor that the district court needs to base its injunction around. Is that the contours of your argument about why even five would not satisfy the state? Five hours? There's sort of two aspects to the problem with the five hours. The first is that, is what I just explained, that the district court didn't look into what would be a substantial departure from professional judgment. And then the second part is, as we note in our brief, there are several instances that suggest that five hours is in fact more than what would be acceptable under professional judgment, or at least not a substantial departure from professional judgment. But the court doesn't need to get into that in order to remand in this case because even accepting five hours, it's plain that seven and a half hours is more than five hours. I guess I'm trying to understand, if we took what the district court said, which was that five would be a constitutionally minimum floor, and we look at what Dr. Cawley said and said, okay, it should be five, not 7.5, would the state continue to have a problem with that part of the injunction? Yes, Your Honor, because the district court's opinion doesn't say that five hours is the constitutional minimum. It uses this term, minimum acceptable, but doesn't really engage with the requirements of Youngberg, which is not just to look at what is in compliance with professional judgment, or even what would be the floor of professional judgment, but what is a substantial departure from professional judgment. And I think this court's opinion in Rasho actually illustrates this pretty well. There, the court set very specific numbers of staffing, but the problem was is that there wasn't a finding that, well, if you had one less person in one position, would that all of a sudden go outside of what is constitutionally permissible? And it's the same sort of problem here. The district court didn't engage in an analysis about whether, well, it didn't present any findings that would suggest, well, four hours and 55 minutes all of a sudden becomes a substantial departure. Well, are you going a bit too far? Because we have Dr. Cawley on the stand there. And I guess now I'm wondering, do you have any substantive critiques of the method and findings of Dr. Cawley? Well, again, Your Honor, we're not challenging Dr. Cawley's testimony or the district court's findings with respect to that. Then why should we rule in favor of your position? Because it's Dr. Cawley himself who said, you know, one to three hours per session, two to three hours per week. That's where he gets five hours from. Five hours looks a lot like what happens at Rushfield, and that's acceptable. I'm paraphrasing, of course. And so he lands at five, and then the district court mentions five. So if you're not criticizing Dr. Cawley's method and he lands at five, what's the issue? Well, again, Your Honor, Dr. Cawley doesn't actually testify that five hours is the minimum. He testifies to this range, which, as we note in our brief, goes lower than five. So the district court's kind of taking five as, you know, even if you take five as sort of the midpoint of Dr. Cawley's range, which is still less than the 7.5 that the district court put in the injunction, that's still conflating what's constitutionally adequate. You know, one example would be five hours with doing the analysis to find what's the constitutional minimum. I can, let me tell you what frustrates me about this case, and it's why the department hasn't mooted it. What I mean by that is you, this very dialogue here shows that the department is very quick to criticize the scope of the injunction. It's very quick to carefully parse Dr. Cawley's expert testimony when the department itself did not bring forward expert testimony because it missed the disclosure deadline that way. But the department is the one that is running the program and that has the constitutional responsibility to ensure that the program is complying with the requirements of due process, or by extension, professional norms and then due process that way. And why it is that this litigation began in 2014 remains pending is beyond me. I have no idea. And I don't understand for the life of me why the department has not approached the plaintiffs with what your view of professional norms requires, what you can implement, and said this is what we propose as a collective suite of remedial measures to restore the program to constitutional compliance, and to just moot this. I don't understand that at all. So Your Honor, I want to be clear that the department has made throughout this litigation a continual effort to increase the amount of therapy provided, not just to these three plaintiffs. You haven't sent us a letter that said the litigation is moot. We had a series of mediations with the plaintiffs. We've sat down. Here's the program parameters. And the plaintiffs now agree the litigation is at an end. There's no need to come in for oral argument. Your Honor, I think one of the reasons that the department, or rather the position that the department has taken with respect to making changes to the treatment provided in the program is it wants to ensure that it's providing the same level of treatment for all SDPs. So the department, in the time in between the three years between trial and when the district court ruled, it made an effort to increase staffing so that it could increase the amount of therapy for everyone. And it successfully did so. And unfortunately, there's been, at this point, the department has actually lost, it hired four therapists just in this short time after trial and then lost even more therapists than it was able to hire. And the department has continued to make hiring efforts and in fact hired several more therapists recently. But the problem is that all therapists have to be licensed under Illinois' particularly licensing scheme, which requires extensive practice under supervision, so it can't scale up quickly. That's one of the obstacles. The case started in 2014. It's 2023. And to be clear, Your Honor, the department hasn't been providing the same sort of continual amount of therapy during that entire time. There's evidence in the record that shows how the department was trying to... So if we remand, if we remand consistent with your invitation, is the department prepared to sit down immediately with the plaintiffs or go into the district court and make a showing that the program operating along the following parameters today complies with professional norms? And are you prepared to make that showing as opposed to criticizing the scope of the injunction that's in place now? I can't speak for the person who would be the decision-maker on whether to... You represent the department in this court. Yes, Your Honor, and I just haven't spoken with my client about the potential for a mediation, but I would be happy to... It seems to me that this needs to be resolved quickly. I understand, Your Honor, and I would certainly propose that to my client. And I'd like to reserve the remainder of my time for rebuttal. Very well. Mr. Simmons, good morning. Good morning. You may please court. My name is John Simmons, and I represent the appellees James Howe, Jacob Callow, and George Needs. The Sexually Dangerous Persons Program at, or SDP for short, at Big Muddy River Correctional Center is an insult to the Constitution and common American decency. It deprives the plaintiffs of their liberty interests while denying them treatment mandated by Illinois law. Without such treatment, they cannot recover. Without recovery, they cannot be discharged. It's basically a life sentence. They can get out cure or coffin. That's what it's been said. The trial court agreed with these sentiments. Plaintiffs have not been convicted of a crime, yet they're being held indefinitely. Mr. Howe's been over five years. Mr. Callow's over 20 years. Mr. Needs is over 40 years. So while the case has been pending for a bit, these gentlemen... Mr. Simmons, am I right? You've been involved for a while. I've been involved since the trial. I got appointed to try the case in 2018. Okay. And had your firm been involved before that? No. Okay. Since the trial, have you all had meetings with the department and sat down and said, look, we should share a mutual interest in this? In other words, I hear that you got... I know your problems with the injunction. I got it. But why don't we sit down? My clients have an interest in their constitutional rights being respected, and your clients shoulder a responsibility to operate the program consistent with the Constitution. Let's talk about this. I have appeared not as a litigant, but just because my client was going to be in Scott County, Illinois. And I was near Scott County, so I stopped in the courthouse to visit with my client while he was in court. And I did make those intimations to another... But have you guys had meetings? No. Talked about this? No. I mean, the trial was in 2018. The final order came out in 21. There was some motion practice then, and now we're in 23. And we're still bickering about the scope of the injunction. It's so frustrating, Your Honor. And the comparison to Rushville came up with Dr. Cowley between Big Muddy River Correctional Center and Rushville. And Rushville had the five-hour requirement. And the state argues that that should be, at most, the standard. But the reality is, at Rushville, they have all-day programming for these folks in the SDP program. Actually, that's the SVP program. All day, from morning till night, they can do things and do classes and whatnot. And there's nothing at Big Muddy River. They're just in their cell. And if their staff, which right now it's one counselor per 40-some-odd folks civilly committed, they're just in their cell, locked in their cell. And it's just not right. I mean, this is America. Come on. This is ridiculous. So I share your sentiments that this has gone on too long. It's ridiculous. And this court should affirm the lower court's ruling that seven and a half is a fair minimum. I mean, I can't do the math right now, but if you look at how long . . . The problem is, what's the evidence for that? Dr. Calley's testimony. Well, he didn't testify to that, though. He didn't testify that seven and a half is the bare minimum under this Constitution. No, you're right. That's the problem. I agree with Judge Scudder's concern. If we remand, we remand back to the district court to try again on several things, and this lasts longer. Right. This goes on and on and on. Right. Dr. Calley relied on this SOC PIN, is the acronym, the Sexual Offender Civil Committee Network Program. Nineteen states, the data from all that. And the mean average there was seven and a half hours. And that's where the court got the seven and a half hours. But under the PLRA, that's not the test. That's the problem. It's what's . . . All we can do as judges is require that the state provide what's constitutionally necessary. And I don't know that there's any evidence at all that seven and a half hours is constitutionally necessary. Maybe there's evidence that five hours is constitutionally necessary. Maybe. But the district court doesn't really engage in that analysis. And there are other problems that the state has identified as well that may have to go back to the district court. So, for the district court to reconsider the scope of the injunction, which drags this on longer and longer, while all the time your clients are sitting in jail, not receiving perhaps what's constitutionally required. Right. The Act calls . . . the SDPA calls for semiannual reviews for SDPs. My one client, James Howell, hasn't had a semiannual review in three and a half years. So, I mean, it's just ridiculous what's going on with these folks. And it should not be. Has he petitioned the court in the meantime? Yes. I mean, it just . . . nothing can happen. He's even filed in the state action, which I'm not the litigant for. In his state action, he's even filed a writ of habeas corpus. And the state just ignores it because he's doing it pro se. If you don't have a lawyer, they're not going to do it. So . . . and that's not my case. I can't interject myself in that. But it's just ridiculous. This whole SDPA is crazy. And I tried the case and we won. The court found . . . and I would ask that you affirm the court's ruling. But, at the same time, I know I'm on the right side because these gentlemen should not just be in jail without being convicted of a crime for however long it's been. And . . . Well, the difficult . . . it's a very difficult area. Both sides get that. And the treatment is complicated. And it has a lot of different facets to it. But the gravity of depriving somebody of liberty without a criminal conviction and then at the same time not attending to your constitutional obligations to be able to do that is what disturbs me immensely. And not dealing with that with a real sense of urgency that way. It doesn't mean that the evaluation of a particular individual is going to be easy. I'm not naive about resource staffing challenges. But this case did not start yesterday and these concerns were not Okay. Very well. Thank you. Ms. Jonig, there's some time left for you. Thank you, Your Honor. I'd like to clarify just a few quick things. First, all three plaintiffs have received semi-annual evaluations and treatment plans in November and December of this past year. And then two, the discussion about the plaintiff's state court proceedings. So Mr. Howe is represented by counsel because he is statutorily afforded that right under the Illinois Sexually Dangerous Persons Act. Any person who seeks a discharge petition in state court has the right to counsel. And it's the state court that ultimately decides whether to release or whether to conditionally release or discharge a person from commitment. The record in this case reflects that of the six plaintiffs who originally started in this litigation, three of them were conditionally released or discharged from commitment during the course of this litigation. The record also reflects a number of other SDPs who are not part of this litigation were then released during the pendency of the litigation and an additional approximately 20 sexually dangerous persons have been discharged or conditionally released just since trial. So the obstacles to release here are not entirely about the treatment that's provided to SDPs. The obstacles to the ultimate decision maker about release or discharge comes from the state committing court. And all three plaintiffs have recovery petitions pending in the state court currently. For these reasons, we would ask the court to vacate the injunction and remand to the district court. Thank you. Okay, very well. Thank you. Thanks to both parties. The case will be taken under advisement.